IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

VICTOR HERNANDEZ
5000 Columbus Street
Arlington, VA 22304

ADRIAN SANCHEZ
4123 Melon Street
Alexandria, VA 22309

OSCAR ALONSO SANDOBAL
4123 Melon Street
Alexandria, VA 22309

ANTONIO SANCHEZ SANDOBAL
4123 Melon Street
Alexandria, VA 22309

      Plaintiffs, on behalf of
      themselves and all similarly
      situated individuals,

v.                                                                                          Civil No. _____

P N DRYWALL CONTRACTOR, LLC
7123 Loisdale Road
Springfield, VA 22150

P & D CONTRACTORS, LLC
6115 Chillum Place NE
Washington, DC 20011

      Defendants.

## COMPLAINT

### Nature of the Action

1.    Defendants employed plaintiffs and similarly situated individuals as construction workers for the renovation of Ballou High School in Washington, DC. Defendants did not pay plaintiffs and similarly situated individuals overtime wages or prevailing wages, and defendants

misclassified plaintiffs and similarly situated individuals as independent contractors. When the named plaintiffs complained about these practices, defendants fired them.

2. Plaintiffs, on behalf of themselves and all similarly situated individuals, bring this action to recover damages for defendants' willful failure to pay overtime wages and for defendants' knowing misclassification of their employees as independent contractors. The named plaintiffs also seek damages for the retaliatory discharge that was the direct result of complaining about these unlawful practices.

3. Plaintiffs, on behalf of themselves and all similarly situated individuals, assert claims under: a) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; b) the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code §§ 32-1001 *et seq.*; c) the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code §§ 32-1301 *et seq.*; and the District of Columbia Workplace Fraud Act ("DCWFA"), D.C. Code §§ 32-1331.01 *et seq.* The named plaintiffs also assert separate retaliation claims under the DCWFA.

4. Plaintiffs, on behalf of themselves and all similarly situated individuals, bring their FLSA and DCMWA claims as a "collective action" pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1012(b), and their DCWPCL and DCWFA claims as a traditional class action pursuant to Fed. R. Civ. P. 23.

## Jurisdiction and Venue

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (FLSA jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to plaintiffs' claims occurred in this district.

**Parties**

7. Plaintiffs are adult residents of Virginia, residing at the addresses in the caption above.

8. Defendant P N Drywall Contractor, LLC ("PN") is a Virginia limited liability company that is not registered in the District of Columbia. PN provides construction services in the District of Columbia. PN's principal place of business is located at: 7123 Loisdale Road, Springfield, VA 22150. PN's resident agent for service of process is: Walter Antonio Costanza, 7123 Loisdale Road, Springfield, VA 22150.

9. Defendant P & D Contractors, LLC ("P&D") is a Maryland limited liability company. P&D provides construction services in the District of Columbia. P&D's principal place of business is located at: 6115 Chillum Place NE, Washington, DC 20011. P&D's resident agent for service of process is: Mercedes Fuentes, 1430 Chapin Street NW, Apt. 203, Washington, DC 20009.

10. At all relevant times, each defendant employed at least two people.

11. At all relevant times, each defendant had an annual dollar volume of sales or business done of at least $500,000.00.

12. At all relevant times, plaintiffs and similarly situated individuals were engaged in commerce or in the production of goods for commerce

13. At all relevant times, and with respect to plaintiffs and similarly situated individuals, each defendant had and exercised both actual and apparent authority to: hire and fire, direct and supervise work, and bind and set wage and hour policies.

14. At all relevant times, defendants were employers of plaintiffs and similarly situated individuals within the meaning of 29 U.S.C. § 203(d) (FLSA), D.C. Code § 32-1002(3)

(DCMWA), D.C. Code § 32-1301(1) (DCWPCL), and D.C. Code §§ 32-1331.01(3), 32-1331.03, and 32-1331.04(c) (DCWFA).

15. At all relevant times, plaintiffs and similarly situated individuals were employees of defendants within the meaning of 29 U.S.C. § 203(g) (FLSA), D.C. Code § 32-1002(1)–(2) (DCMWA), D.C. Code § 32-1301(2) (DCWPCL), and D.C. Code § 32-1331.01(2) (DCWFA).

16. At all relevant times, defendants were joint employers of plaintiffs and similarly situated individuals within the meaning of 29 C.F.R. § 791.2 and the corresponding regulations and case law under the DCMWA, DCWPCL, and DCWFA.

17. At all relevant times, defendants were aware that they were legally required to pay plaintiffs and similarly situated individuals one and one-half times their regular hourly wage for all hours worked in excess of 40 hours in any one workweek.

18. At all relevant times, defendants were aware that they were legally required to treat and compensate plaintiffs and similarly situated individuals employees — and not as independent contractors.

19. At all relevant times, the prevailing wage pursuant to the Davis-Bacon Act required to be paid to carpenters working on the construction of District of Columbia government buildings was $34.94.

20. At all relevant times, defendants' contract with HESS required defendants to pay the prevailing wage mandated by federal and District of Columbia law.

## Factual Allegations

21. Plaintiffs worked for defendants at a construction project ("Project") located at Frank W. Ballou Senior High School, 3401 4th St. SE, Washington, DC 20032.

22. The Project involves the demolition of an old D.C. high school building and the construction of a new, $124-million campus.

23. The Project is funded by the District of Columbia.

24. The general contractor for the Project is HESS.

25. The plaintiffs and similarly situated individuals were hired to work as carpenters on the Project by Emilio "Milo" (last name unknown), an employee of PN.

26. Emilio told the Plaintiffs they would be paid $17 an hour.

27. In order to work on the Project, plaintiffs and similarly situated individuals were required to complete an application form distributed by HESS. Emilio instructed plaintiffs and similarly situated individuals to indicate on this form that they were employed by P&D.

28. In order to gain entry to the Project each day, plaintiffs and similarly situated individuals were required to complete an badge application form distributed by HESS. Again: Emilio instructed plaintiffs and similarly situated individuals to indicate on this form that they were employed by P&D.

29. PN was essentially a pass-through labor contractor for P&D. PN brought plaintiffs and similarly situated individuals to the Project and wrote their paychecks, but PN had little substantive interaction with plaintiffs during the course of the Project.

30. Plaintiffs' and similarly situated individuals' duties on the Project consisted primarily of carpentry: framing, installation of doors and ceilings, and installation of drywall.

31. Plaintiffs were employed on the Project by defendants from approximately January 13, 2013 through approximately April 5, 2013.

32. During this period, plaintiffs and similarly situated individuals worked five to six days a week for defendants.

33. Plaintiffs and similarly situated individuals worked approximately the same exact schedule during the length of their employment.

34. Plaintiffs worked approximately the following hours during the indicated workweeks:

| Workweek Start | Workweek End | Total Hours | Regular Hours | Overtime Hours |
|---|---|---|---|---|
| January 13, 2014 | January 19, 2014 | 50 | 40 | 10 |
| January 20, 2014 | January 26, 2014 | 43 | 40 | 3 |
| January 27, 2014 | February 2, 2014 | 49 | 40 | 9 |
| February 3, 2014 | February 9, 2014 | 40 | 40 | 0 |
| February 10, 2014 | February 16, 2014 | 49 | 40 | 9 |
| February 17, 2014 | February 23, 2014 | 51 | 40 | 11 |
| February 24, 2014 | March 2, 2014 | 42 | 40 | 2 |
| March 3, 2014 | March 9, 2014 | 51 | 40 | 11 |
| March 10, 2014 | March 16, 2014 | 53 | 40 | 13 |
| March 17, 2014 | March 23, 2014 | 52 | 40 | 12 |
| March 24, 2014 | March 30, 2014 | 40 | 40 | 0 |
| March 31, 2014 | April 6, 2014 | 40 | 40 | 0 |

35. Plaintiffs and similarly situated individuals were not paid the prevailing wage required by federal and District of Columbia law of $34.94 per hour, including wages and fringe benefits.

36. Plaintiffs and similarly situated individuals were not paid one and one half times their regular rate for hours worked over 40 in any one workweek.

37. For the first ten workweeks, defendants paid plaintiffs $17.00 per hour for each hour they worked — including overtime hours.

38. For the final two workweeks, defendants paid plaintiffs $20.00 per hour for each hour they worked — including overtime hours.

39. Plaintiffs and similarly situated individuals were always paid by a simple check drawn on the account of PN. These checks were not accompanied by a paystub.

40. None of these checks reflected appropriate payroll tax withholdings or accounted for plaintiffs' hours of work.

41.     Defendants did not pay their share of payroll taxes on the wages embodied in these checks. Defendants should have paid in taxes a minimum of 11.15% of the amount plaintiffs earned for plaintiffs' and similarly situated individuals' benefit — instead of unlawfully paying plaintiffs as independent contractors. (11.15% equals the sum of a) employers' share of social security taxes (6.2%), b) employers' share of Medicare taxes (1.45%), c) minimum D.C. unemployment insurance taxes (2.9%), and d) minimum federal unemployment insurance taxes (0.6%).

42.     Defendants did not maintain true and accurate records of each hour, day, and week worked by plaintiffs and similarly situated individuals, as required by the FLSA, DCMWA, DCWFA, or the regulations promulgated under these laws.

43.     Accordingly, the exact amount of hours worked by plaintiffs and similarly situated individuals — and wages owed to plaintiffs and similarly situated individuals — will only be known through discovery.

---

44.     Plaintiffs and similarly situated individuals were primarily supervised by employees of P&D. However, plaintiffs were supervised by employees of both PN and P&D, including:

    a.     Jose Tobias, employed by P&D, exercised the most supervisory control over the plaintiffs and similarly situated individuals. Mr. Tobias was the individual who most often directed the plaintiffs' work, reviewed their progress, and gave the plaintiffs permission to take breaks. Mr. Tobias was present at the plaintiffs' worksite almost every day that the plaintiffs worked. Every Monday at 6:30 a.m., Mr. Tobias held a progress meeting for all PN and P&D employees on the Project, including plaintiffs, in a classroom of the old school.

  b.  Uriel (first name spelled phonetically, last name unknown), employed by P&D, also occasionally supervised the plaintiffs and similarly situated individuals in the same manner as Mr. Tobias. Uriel is believed to be a lower level manager at P&D.

  c.  Antonio (last name unknown), employed by PN, also occasionally supervised the plaintiffs and similarly situated individuals in the same manner as Mr. Tobias. Antonio was the person who handed the plaintiffs and similarly situated individuals their paychecks.

  d.  Emilio "Milo" (last name unknown), employed by PN, also occasionally supervised the plaintiffs and similarly situated individuals in the same manner as Mr. Tobias. Though he arranged for plaintiffs and similarly situated individuals to work on the Project, plaintiffs rarely saw him after they started working on the Project.

  e.  Jose Alvarez, an employee of P&D, also occasionally supervised the plaintiffs and similarly situated individuals. Mr. Alvarez came to plaintiffs' worksite approximately three times per week to review and direct the plaintiffs' work. Mr. Alvarez is believed to be a higher level manager at P&D.

45. Tobias, Uriel, Milo and Antonio all each told at least one of the plaintiffs on at least one occasion that if anyone came on the jobsite and asked plaintiffs who they worked for, plaintiffs were to say "P&D."

46. Tobias, Uriel, Milo and Antonio all each told at least one of the plaintiffs on at least one occasion that if anyone asked plaintiffs if they were earning "scale" ($34.94 per hour), they were to say that they were.

47. Defendant P&D provided plaintiffs and similarly situated individuals with almost all of materials, equipment and safety gear that they used to perform their work, including, for example: scaffolding, harnesses, chop saws, and stepladders.

48. Plaintiffs and similarly situated individuals were required to purchase a special tool called a "shotgun" from P&D for the price of $140.00. This amount was deducted from plaintiffs' and similarly situated individuals' paychecks.

49. When the plaintiffs and similarly situated individuals signed in and out of work, they did so on a timesheet with P&D letterhead.

50. On one workday, plaintiffs and similarly situated individuals were directed to perform work at the home of Sean Juman, the owner of P&D.

51. Mr. Tobias, an employee of P&D, fired plaintiffs on or about April 5, 2014.

---

52. Plaintiffs worked alongside two types of employees that were employed by defendants: a) P&D hires, and b) PN hires. The former were brought to the Project by P&D, and were generally Caucasian or African-American. The latter were brought to the Project by PN, and were generally first-generation immigrants of Latino descent.

53. The P&D hires and the PN hires differed in only two important respects: a) the person who hired them, and b) the amount they were paid.

54. There were approximately 12 P&D hires, and approximately 80 PN hires, including plaintiffs, who worked on the Project.

55. The P&D hires and the PN hires worked alongside each other, worked the same hours each workday, and performed the same work on the Project.

56. The P&D hires and the PN hires signed in and out of the worksite each day on the same sign-in sheet and in the same manner. This sign-in sheet was on P&D letterhead.

57. The P&D hires and the PN hires were each required to attend the weekly progress meetings conducted by Mr. Tobias. At these meetings, the P&D hires and the PN hires received the same instructions.

58. The P&D hires were paid the prevailing wage required by federal and District of Columbia law of $34.94 per hour, including wages and fringe benefits; the PN hires were paid between $15.00 and $20.00 per hour.

59. The P&D hires were paid overtime; The PN hires were not.

60. Mr. Tobias frequently told the named plaintiffs and other PN hires that they should not file any complaints with the District of Columbia government regarding P&D's labor practices.

61. Mr. Tobias frequently told the plaintiffs and other PN hires that if they or anyone else complained about P&D's labor practices, P&D would lose the job and the named plaintiffs and other PN hires would be out of work.

62. At one of the weekly progress meetings, Mr. Tobias said of P&D's labor practices: "if you open your mouth you will be fired."

63. Despite these warnings, the named plaintiffs asked Mr. Tobias why they were not being paid scale or overtime. Mr. Tobias told the named plaintiffs not to ask questions.

64. On information and belief, Mr. Tobias raised the salary of the named plaintiffs and other PN hires to $20.00 per hour in order to appease these concerns over P&D's labor practices.

65. Despite the raise, the named plaintiffs continued to ask Mr. Tobias and other P&D supervisors why they were not being paid scale or overtime.

66. On or about April 5, 2014, the named plaintiffs expressed these concerns to Mr. Tobias. In response, Mr. Tobias fired the named plaintiffs, effective immediately.

67. On information and belief, Mr. Tobias fired the named plaintiffs as a direct result of their complaints regarding P&D's illegal labor practices.

### Collective Action Allegations

68. This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. §216(b) and the DCMWA, D.C. Code § 32-1012.

69. Plaintiffs bring their FLSA and DCMWA claims on their own behalf, and on behalf of: all past and present non-exempt employees of defendants who, while working on the Project, were not paid one and one-half their regular rate of pay for those hours worked in excess of forty in any one workweek.

70. On information and belief, there are approximately 80 past and present non-exempt employees of defendants who are similarly situated to plaintiffs in that they were carpenters who were not paid overtime on the Project.

71. On information and belief, defendants owe plaintiffs and similarly situated individuals approximately $512,000.00 in overtime and liquidated damages, pursuant to the FLSA and DCMWA.

72. Pursuant to 29 U.S.C. § 216(b), plaintiffs have consented in writing to be plaintiffs in this action. Their consent forms will be filed as a separate docket entry.

### Class Action Allegations

73. This action is maintainable as an "opt-out" class action pursuant to D.C. Code § 32-1308 and Federal Rule of Civil Procedure 23.

74. Plaintiffs bring their DCWPL and DCWFA claims on their own behalf, and on behalf of: all past and present non-exempt employees of defendants who, while working on the Project, (1) were not promptly paid one and one-half times their regular rate of pay for those hours worked in excess of forty in any one workweek, (2) were not promptly paid prevailing wages mandated by federal and District of Columbia law and the contract between defendants and the general contractor, and (3) were misclassified as independent contractors.

75. On information and belief, there are approximately 80 past and present employees of defendants who are similarly situated to plaintiffs in that they were carpenters working on the Project who were not promptly paid overtime or prevailing wages, and who were misclassified by defendants as independent contractors.

76. On information and belief, defendants owe plaintiffs and similarly situated individuals approximately $14,340,000.00 in unpaid wages, lost benefits, damages, and statutory penalties, pursuant to the DCWPCL and DCWFA.

## COUNT I
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE FLSA

77. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

78. The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. § 207(a)(1).

79. Defendants violated the FLSA by knowingly failing to pay plaintiffs and similarly situated individuals one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

80. Defendants' violations of the FLSA were willful.

81. For their willful violations of the FLSA, defendants are liable to plaintiffs and similarly situated individuals for unpaid overtime compensation, an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT II
## FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA

82. Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

83. The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code § 32-1003(c).

84. Defendants violated the DCMWA by knowingly failing to pay plaintiffs and similarly situated individuals one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

85. Defendants' violations of the DCMWA were willful.

86. For their violations of the DCMWA, defendants are liable to plaintiffs and similarly situated individuals for unpaid overtime compensation, and an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## FAILURE TO PAY WAGES UNDER THE DCWPCL

87. Plaintiffs incorporate the foregoing paragraphs as if set forth in their entirety herein.

88. The DCWPCL requires an employer to promptly pay employees all wages due. D.C. Code § 32-1302–3.

89. For purposes of the DCWPCL, "wages" include, among other things:

13

   a.  "[o]vertime premium" D.C Code § 32-1301(3)(C);

   b.  "runemeration promised or owed…Pursuant to a contract between an employer and another person or entity" D.C Code § 32-1301(3)(E)(ii); and

   c.  "runemeration promised or owed…Pursuant to District of federal law" D.C Code § 32-1301(3)(E)(iii).

90. Defendants violated the DCWPCL by knowingly failing to pay plaintiffs and similarly situated individuals all wages earned, including the overtime premium and prevailing wages pursuant to federal and District of Columbia law and the contract between defendants and the general contractor.

91. Defendants' violations of the DCWPCL were willful.

92. For their violations of the DCWPCL, defendants are liable to plaintiffs and similarly situated individuals for unpaid overtime and prevailing wages, an amount equal to three times the amount of unpaid wages as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT IV
## MISCLASSIFICATION OF EMPLOYEES UNDER THE DCWFA

93. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

94. The DCWFA forbids employers in the "construction services" industry from misclassifying their employees as independent contractors. D.C. Code §§ 32-1331.01 *et seq.*

95. The DCWFA presumes an employer-employee relationship unless an employer can affirmatively meet rigorous tests. D.C. Code §§ 32-1331.04.

96. Defendants violated the DCWFA by knowingly misclassifying plaintiffs and similarly situated individuals as independent contractors, and not paying them overtime or making the appropriate employer-side tax contributions.

97. Defendants' violations of the DCWFA were willful.

98. For their violations of the DCWFA, defendants are liable to plaintiffs and similarly situated individuals for the amount of any lost wages and benefits, an amount equal to three times the lost wages or benefits as liquidated damages, statutory damages of $500.00 for each workweek that the defendants misclassified plaintiffs, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT V
## RETALIATION UNDER THE DCWFA

99. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

100. The DCWFA prohibits employers from taking an adverse action against an employee because an employee "[m]akes an oral or written complaint with the employer…alleging that the employer violated any provision of the [DCWFA]."

101. Defendants violated the DCWFA when they fired the named plaintiffs as a result of the plaintiffs' complaints regarding defendants' failure to treat the named plaintiffs as employees.

102. For these violations of the DCWFA, defendants are liable to plaintiffs for the amount of any lost wages and benefits, an amount equal to three times the lost wages or benefits as liquidated damages, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the Court enter judgment against all Defendants on all counts, jointly and severally, and grant the following relief:

    a.    Award plaintiffs and similarly situated individuals:

        i.    unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

    ii.    unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

    iii.    unpaid overtime and prevailing wages, plus an amount equal to three times the amount of unpaid wages earned as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

    iv.    lost wages and benefits as a result of misclassification, plus an amount equal to three times the lost wages and benefits, plus a statutory penalty of $500.00 for each workweek in which defendants misclassified the plaintiffs, pursuant to the DCWFA, D.C. Code § 32-1331.09;

b.    Award the named plaintiffs:

    i.    lost wages and benefits as a result of their retaliatory discharge by defendants, plus an amount equal to three times the lost wages and benefits;

c.    Award plaintiffs reasonable attorneys' fees and expenses incurred in the prosecution of this action;

d.    Award plaintiffs court costs;

e.    Award plaintiffs prejudgment and postjudgment interest as permitted by law; and

f.    Award any additional relief the Court deems just.

Date: 08/26/2014                              Respectfully submitted,

                                              /s/ Justin Zelikovitz
                                              Justin Zelikovitz, #986001
                                              LAW OFFICE OF JUSTIN ZELIKOVITZ, PLLC
                                              519 H Street, NW; Second Floor
                                              Washington, DC 20001
                                              Phone: (202) 803-6083
                                              Fax: (202) 683-6102
                                              justin@dcwagelaw.com


                                              /s/ Virginia R. Diamond
                                              Virginia R. Diamond, #393934
                                              ASHCRAFT & GEREL, LLP
                                              4900 Seminary Road, Suite 650
                                              Alexandria, VA 23221
                                              Phone: (703) 931-5500
                                              Fax: (703) 820-0630
                                              vdiamond@ashcraftlaw.com

                                              *Counsel for Plaintiffs*